UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| NIKIYA MAXWELL,<br><br>                              Plaintiff, | **REPORT AND**<br>**RECOMMENDATION** |
| v. | 15-CV-00585(RJA)(JJM) |
| NANCY A. BERRYHILL, ACTING COMMISSIONER<br>OF SOCIAL SECURITY, | |
| Defendant.[1] | |

_____

This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Supplemental Security Income ("SSI").  Before me are the parties' cross-motions for judgment on the pleadings [8, 14],[2] which have been referred to me for initial consideration [9].   Having reviewed the parties' submissions [8, 14, 15], I recommend that I recommend that this case be remanded to the Acting Commissioner for further proceedings.


## BACKGROUND

Plaintiff's initial December 2009 application for SSI was denied. T17, 73-90.[3] On January 30, 2012, plaintiff, then 28 years old, filed a second application for SSI, alleging that she was disabled as a result of Type II diabetes, depression, anxiety/post-traumatic stress

---

[1]      Since Nancy A. Berryhill is now the Acting Commissioner of Social Security, she is substituted for Carolyn W. Colvin as the defendant in this action pursuant to Fed. R. Civ. P. ("Rule") 25(d). *See* Quintana v. Berryhill, 2017 WL 491657, *7 n. 1 (W.D.N.Y. 2017).

[2]      Bracketed references are to the CM/ECF docket entries.

[3]      References denoted as "T" are to the transcript of the administrative record.

disorder ("PTSD"), insomnia, chronic back problems, obesity, and blindness in her left eye resulting in frequent headaches. T157. Her initial application was denied. T97. An administrative hearing was held on June 10, 2013 before Administrative Law Judge William M. Weir. T33-69. At the hearing, plaintiff was represented by counsel. T31. On March 24, 2014, ALJ Weir determined that plaintiff was not disabled (T17-25), and the Appeals Council denied plaintiff's request for review. T3. Thereafter, plaintiff commenced this action.

Based on the medical records and testimony, ALJ Weir determined that plaintiff's non-severe impairments included PTSD, depression, hyperthyroidism and hypertension, and that her severe impairments included diabetes and obesity. T19. He also determined that since there was "no evidence" that plaintiff was blind, her alleged left eye blindness was not a medically determinable impairment. T20-21. ALJ Weir concluded that plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work, and based upon that RFC, was not disabled since January 30, 2012. T21-25.[4]

In reaching that determination, ALJ Weir gave significant weight to the opinion of Donna Miller, D.O., who performed a consultative internal medicine examination on April 20, 2012, at which plaintiff complained of diabetes, chronic low back pain,[5] obesity (plaintiff was 5' 7" and weighed 437 lbs.; she reported her maximum weight as being 496 lbs.) and headaches, which were accompanied with photophobia, phonophobia and nausea. T352-53. Dr. Miller diagnosed her with those ailments, as well as with hypertension and a history of acute renal

---

[4]     "Sedentary work is the least rigorous of the five categories of work recognized by SSA regulations." Schaal v. Apfel, 134 F.3d 496, 501 n. 6 (2d Cir. 1998). To satisfy this category of work, an individual must be able to lift up to 10 pounds at a time, be able sit for up to six hours, and walk or stand for a total of no more than about two hours of an eight hour workday, but need not do so for a continuous period. See 20 C.F.R. §404.967(a); Halloran v. Barnhart, 362 F.3d 28, 31, 33 n.3 (2d Cir. 2004).

[5]     Plaintiff reported to Dr. Miller that x-rays and MRIs of her back were normal. T352.

failure, and concluded that she had a "moderate limitation for heavy lifting, bending, and carrying secondary to her obesity". T355.  ALJ Weir determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [his] [RFC] assessment". T23.

At the administrative hearing plaintiff testified that her medical problems became worse after December 2011. T41.  Since that time, she was treated at the hospital for abscesses, which she linked to her diabetes and described as causing a "sharp pain, like somebody is stabbing you with a knife in that area". T41, 47.

Plaintiff also testified that she had "really bad headaches" when her blood pressure was high. T49.  This occurred five times per month and the headaches lasted throughout the entire day. T50.  When this happened, she would  "take an Advil, and just go to sleep", which "sometimes helps, and sometimes it doesn't" Id.  At her October 15, 2012 visit with her treating physician, Priyanka Patnaik, M.D., she complained that she woke up with headaches three times per week and was taking Excedrin , "which helped", but that "Lortab does not help for the headache" T595. [6]  Plaintiff described her headaches as lasting the whole day with "[s]ome sensitivity to light and sound occasionally". Id.  There is no indication that Dr. Patnaik prescribed any treatment for plaintiff's headaches, and did not include headaches in her assessment of plaintiff's medical issues. T596-99.

Plaintiff further testified that she had "really bad back pain", which "just comes and go[es]", and was relieved by lying flat on her back for three or four hours. T41, 44-45.  She took Flexeril and Lortabs for her back pain, which helped "a lot". T45.  Dr. Patnaik did not suggest either physical therapy or pain management for her back pain; instead, she recommended

---

[6]     Plaintiff testified that she was prescribed Lortab for her back pain. T44-45.

that plaintiff lose some weight and suggested bariatric surgery, but she was unable to lose the necessary amount of body fat in order to undergo that surgery. T42, 45. Although Dr. Patnaik's progress notes from September 2012 and April and May 2013 stated that plaintiff walked with a normal gait and station and that her motor strength was normal in all muscle groups, it was noted that her lower back was tender on palpation. T594, 630, 641.

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

For purposes of entitlement to disability insurance benefits, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§423(d)(1)(A) & 1382c(a)(3)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy". 42 U.S.C. §§423(d)(2)(A) & 1382c(a)(3)(B).

In order to determine whether plaintiff is suffering from a disability, the following five-step inquiry must be employed:

> "1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform."

Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. *See* Talavera v. Astrue, 697 F.3d 145 (2d Cir. 2012); 20 C.F.R. §§404.1520, 416.920. Moreover, the ALJ has an affirmative duty to fully develop the record where deficiencies exist. *See* Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972); Swiantek v. Acting Commissioner of Social Security, 588 Fed. Appx. 82, 84 (2d Cir. 2015) (Summary Order).

**B.     Plaintiff's Arguments**

   **1.     Did ALJ Weir Properly Evaluate Plaintiff's Headaches, Low Back Pain and Recurrent Abscesses?**

At step two of the five-step evaluation process, plaintiff must establish that she suffers from a "severe medically determinable physical or mental impairment". 20 C.F.R. §416.920(a)(4)(ii). To qualify as "severe", it must "significantly limit[ ] [the plaintiff's] physical or mental ability to do basic work activities". 20 C.F.R. § 416.920(c). "[P]laintiff bears the burden to provide medical evidence demonstrating the severity of her condition." Gonzalez v. Colvin, 2016 WL 5477591, *11 (E.D.N.Y. 2016). "An ALJ is required to identify all impairments supported by substantial evidence at Step Two". Cruz v. Colvin, 2017 WL 1190488, *3 (W.D.N.Y. 2017). Although it is intended to "screen out *de minimis* claims" Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition 'severe.'" McDowell v. Colvin, 2013 WL 1337152, *6 (N.D.N.Y.), adopted, 2013 WL 1337131 (N.D.N.Y. 2013).

   In order to qualify as "medically determinable", the impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques". 20 C.F.R. §416.908.[7] A medically determinable impairment "cannot be established in the absence of objective medical

---

[7]    Effective March 27, 2017, this regulation was amended and relocated to 20 C.F.R. §416.921. *See* 82 FR 5844-01, *5874, 5879; 2017 WL 168819 (January 18, 2017). However, the revised regulation is not applicable to this case. *See* Combs v. Commissioner of Social Security, 459 F.3d 640, 642 (6th Cir. 2006) ("[t]he [Social Security] Act does not generally give the SSA the power to promulgate retroactive regulations"); Pendergraph v. Berryhill, 2017 WL 1207588, *3, n. 3 (E.D. Tenn. 2017).

-6-

abnormalities", and "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment". SSR 96–4p, 1996 WL 374187 *1–2.

Plaintiff argues that at step two ALJ Weir failed to evaluate her headaches, low back pain and recurrent abscesses, which "infected the rest of the . . . sequential evaluation". Plaintiff's Memorandum of Law [8-1], pp. 15-16. The Acting Commissioner responds that "the medical evidence . . . is inconclusive that her headaches, chronic back pain, and recurrent abscesses constituted medically-determinable impairments rather than residual symptoms or sequelae from other impairments", and that "to the extent medical reports document back pain, headaches and abscesses, such are based largely on Plaintiff's own subjective assertions, as opposed to objective medical evidence", which "alone could not be a basis for a disability determination". Acting Commissioner's Memorandum of Law [14-1], p. 20 of 30. She further argues that "[e]ven assuming these conditions are considered medically determinable impairments", ALJ Weir "discussed each of these conditions throughout his decision", and "there is no opinion or objective medical evidence establishing that Plaintiff's medically-determinable impairments, severe or not, and the residual symptoms from such impairments, caused functional limitations that would have prevented Plaintiff from performing the nominal demands of sedentary work, or otherwise eroded the full occupational bases from sedentary work that she could perform". Id., pp. 21, 23 of 30.

"Where an ALJ excludes an impairment from the list of severe impairments at the second step, any such error is harmless where the ALJ identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps." Gonzalez, 2016 WL 5477591, *11. See O'Connell v. Colvin, 558 Fed. App'x 63, 64–65 (2d Cir. 2014) (Summary Order) (finding any error to consider whether the plaintiff

suffered from a severe right leg impairment to be harmless "[b]ecause this condition was considered during the subsequent steps", and "the ALJ's decision ma[de] clear that he considered 'all symptoms' and the 'combination of impairments' in making his determination"); Pavia v. Astrue, 2012 WL 4449859, *10 (N.D.N.Y.), adopted, 2012 WL 4379871 (N.D.N.Y. 2012) ("so long as the plaintiff's headaches and any work-related limitations associated with them were considered at later stages in the sequential analysis, the failure to include them at step two was harmless"). "However, where the omitted impairment was not accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error prejudiced the claimant at later steps in the sequential evaluation process, remand is required." Hudson v. Commissioner of Social Security, 2011 WL 5983342, *6 (D. Vt.), adopted, 2011 WL 6002466 (D. Vt. 2011). With these considerations in mind, I will address each of the impairments that plaintiff alleges were not discussed at step two of ALJ Weir's decision.

### a. Headaches

In applying for benefits plaintiff described her disabling conditions as including being "totally blind in left eye//frequent headaches *due to eye*". T157 (emphasis added). Consistent with that description, at step two ALJ Weir appears to have evaluated plaintiff's headaches as being subsumed by her alleged eye impairment: "The claimant alleged that she was totally blind in her left eye, which caused her to have frequent headaches. . . . There is no evidence that the claimant is blind, and therefore blindness is not a medically determinable impairment." T21.

In evaluating plaintiff's RFC, ALJ Weir also noted that plaintiff complained of frequent headaches caused by her diabetes. T22. While ALJ Weir did not expressly discuss plaintiff's headaches any further in reaching his RFC determination, he stated that he

"considered all symptoms" (T21), and recognized that he "must consider all of the claimant's impairments, including impairments that are not severe". T18.  *See* O'Connell, 558 Fed. App'x at 64–65.  As evidence that he did so, ALJ Weir specifically afforded significant weight to Dr. Miller's consultative examination, which diagnosed plaintiff with headaches, but did not assess plaintiff with any resulting limitations (T355).  Nor is there any evidence in the record that she was prescribed treatment for her headaches, which demonstrates that her headaches were not of such a degree that they would interfere with her ability to perform work activities on a sustained basis.  In Carpenter v. Astrue, 2010 WL 2541222, *4 (W.D.N.Y. 2010), Judge Arcara similarly concluded that:

> "there is no evidence that the plaintiff's headaches are caused by a medically determinable impairment. Symptoms alone cannot establish that an impairment is severe without a medically determinable impairment that could reasonably be expected to produce the symptoms. SSR 96–3p; Gallagher v. Schweiker, 697 F.2d 82, 85 (2d Cir.1983). Every reference to headaches in the plaintiff's memorandum is a subjective complaint recorded by the plaintiff's physicians, not a physician diagnosing headaches through medically acceptable techniques. There is no objective medical evidence that the plaintiff experiences headaches to such a degree they would interfere with work activities."

*See also* Riley-Tull v. Colvin,  2014 WL 2117480, *10 (W.D.N.Y. 2014 ) (in "the absence of any doctor-assessed limitations caused by Plaintiff's headaches from the record" or "any diagnosis or prescribed treatment discernable from the record, other than Plaintiff's own statements at her disability hearing", there is "no evidence indicating that Plaintiff's alleged migraines would result in work-related issues. Keeping in mind that an ALJ is entitled to rely not only what the record says, but 'also on what it does not say,' . . .  the Court finds the ALJ committed no legal error in determining Plaintiff's headaches were not medically determinable or severe impairments").

Therefore, even if ALJ Weir erred by not independently evaluating whether plaintiff's headaches were a severe impairment at step two, I conclude that it was a harmless error.

### b. Recurring Abscesses

As argued by the Acting Commissioner, while ALJ Weir did not mention plaintiff's abscesses at step two, when determining plaintiff's RFC, he recognized her allegation that "[h]er medical problems ha[d] worsened due to abscesses" (T22). Plaintiff points to nothing in the record that would lead to the conclusion that plaintiff's recurring breast and thigh abscesses would limit her ability to perform the full range of sedentary work. Since "plaintiff has failed to provide evidence of what, if any, limitations resulted from . . . [that] impairment[ ]. . . . it is fair to conclude that the ALJ did correctly consider . . . that impairment[ ] when determining her residual functional capacity." Sherman v. Commissioner of Social Security, 2015 WL 5838454, *6 (N.D.N.Y. 2015).

"Although an ALJ's RFC determination 'must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence,' . . . 'we do not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability'". Campbell v. Astrue, 465 Fed. App'x 4, 6 (2d Cir. 2012) (Summary Order). Therefore, I conclude that the error was harmless. See Chaple v. Astrue, 2012 WL 939854, *5 (E.D.N.C.), adopted, 2012 WL 937260 (E.D.N.C. 2012) ("while Dr. Le noted that Claimant reported a chronic skin infection . . . he indicated no functional restriction associated with the condition. . . . Finally, the notes from a February 4, 2009 doctor's visit indicate that Claimant had . . . recurrent abscesses . . . . Again, there is no indication of a

functional limitation related to this condition in the treatment notes. Accordingly, because there is no medical evidence in the record that Claimant's bacterial infection creates a functional limitation that affects her ability to work, substantial evidence supported that the condition was not a severe impairment, and any error in the ALJ's failure to discuss the condition was harmless").[8]

### c. Low Back Pain

ALJ Weir similarly failed to identify plaintiff's low back pain at step two. However, he thoroughly addressed plaintiff's low back pain in determining her RFC. First, he noted that plaintiff reported being "unable to sit more than 3 hours, or stand more than 10 minutes, due to back pain"(T22), but noted that "[i]n 2012, she reported that her back pain was stable and well controlled with medication". T23, 600. ALJ Weir further noted that at the April 2012 consultative examination, she "appeared to be in no acute distress", her gait and stance were normal, "[s]he was able to rise from chair without difficulty", and "[s]traight leg raising was negative". T23. Therefore, I conclude that any error in failing to discuss plaintiff's low back pain at step two was harmless. See Landers v. Colvin, 2016 WL 1211283,*3 (W.D.N.Y. 2016) ("[a]lthough the ALJ did not identify depression as an impairment at step two", the error was harmless since "he does consider it throughout the remainder of the assessment").

---

[8]     Plaintiff also contends that ALJ Weir made an "explicit statement that undermines [his] impartiality and signals an apparent choice to rely not on the medical evidence, but his own lay opinion". Plaintiff's Response [15], p. 3. In support of that argument, she relies on the following statement made by ALJ Weir while discussing the need for plaintiff to lose weight before undergoing bariatric surgery: "[i]t's my purely laid (*sic*) guess that given the central nature of that that they would/should be more aggressive. . . . if they think . . . that's something that needs to be addressed quickly". T68. Plaintiff's interpretation of the statement ignores ALJ Weir's self-described characterization of it as being a "purely la[y] guess". Nor is there evidence that he incorporated that opinion or the fact that plaintiff did not undergo bariatric surgery into his decision.

### 2. Did ALJ Weir Properly Assess Plaintiff's Credibility?

The applicable regulations recognize that a claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone". SSR 96–7p, 1996 WL 374186, *3. However, when the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the entire record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii).

The ALJ must recite "specific reasons for the finding on credibility . . . and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight". SSR 96–7P, 1996 WL 374186, *4. "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if supported by substantial evidence. Aponte v. Secretary, Department of Health & Human Services of the United States, 728 F.2d 588, 591 (2d Cir. 1984). *See* Quintana v. Colvin, 2017 WL 752187, *13 (S.D.N.Y. 2017) ("[t]he ALJ must explain a decision to reject a claimant's testimony with sufficient specificity to enable the reviewing Court to decide whether there are

legitimate reasons for the ALJ's disbelief and whether the ALJ's decision is supported by substantial evidence").

"It is the function of the [ALJ], not [the Court] . . . to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health & Human Services, 705 F.2d 638, 642 (2d Cir. 1983). "Deference should be accorded the ALJ's determination because he heard plaintiff's testimony and observed his demeanor." Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n. 6 (S.D.N.Y. 1995).

In finding that plaintiff's self-described symptoms were not credible,[9] ALJ Weir explained that those activities (including personal care, meal preparation, performance of household chores, use of public transportation, shopping, and attending church) were "not limited to the extent one would expect, given the complaints of disabling symptoms [and] limitations". T23. ALJ Weir also concluded that the "objective medical evidence . . . cannot be fully reconciled with the level of pain and limiting effects of the impairments . . . alleged". T22.

With respect to her diabetes, he noted that "[a]t her April 2012 consultative examination, [she] reported that her blood sugars would normally run between 80 and 140", that in April 2013 she reported that her "morning glucose was usually below 150", and that her May 2013 records demonstrated that "she was doing well and trying to eat healthy". T23.[10] He

---

[9] In discussing plaintiff's credibility, ALJ Weir stated that plaintiff "testified, and understandably may honestly believe that her impairments are disabling" (T23), which plaintiff argues was "condescending". Plaintiff's Memorandum of Law [8-1], p. 23. I disagree. In fact, it appears to be standard language used by some ALJs. See, e.g., Castillo v. Colvin, 2016 WL 1559692, *2 (N.D. Cal. 2016); Oegema v. Colvin, 2015 WL 4903715, *5 (W.D. Mich. 2015).

[10] The normal blood sugar range for diabetics is between 90-130. See Monk v. Commissioner of Social Security, 2008 WL 323769, *2 n. 1 (N.D.N.Y. 2008) (citing National Diabetes Information Clearinghouse, http:// diabetes.niddk.nih.gov/dm/pubs/type1and2/what.htm and Islets of Hope for Persons with Diabetes, http:// www.isletsofhope.com/diabetes/symptoms/normoglycemia_1.html).

further noted that while plaintiff testified that she was "maintained a diabetic compliant diet since 2009, progress notes from November 2012 show that she admitted not being compliant". Id.[11] With respect to plaintiff's physical limitations, ALJ Weir relied upon plaintiff's October 2012 progress note that she had a normal gait and station, and upon Dr. Miller's findings at the consultative examination. T23.

Plaintiff argues that the "errors at Step Two infected the balance of [ALJ Weir's] determination, including his credibility determination", and that he failed to fully evaluate her complaints of headache and lower back pain. Plaintiff's Memorandum of Law [8-1], p. 20. Plaintiff's Response [15], p. 3. For the reasons discussed above, I disagree.

However, plaintiff also argues that ALJ Weir "failed to properly evaluate the reality of [her] daily activities" (plaintiff 's Memorandum of Law  [8-1], p. 20), and I agree. "The ALJ must . . .  assess the credibility of this testimony along with the remainder of the record, but he cannot simply selectively choose evidence in the record that supports his conclusions.  Neither may he mis-characterize a claimant's testimony". Meadors v. Astrue, 370 F. App'x 179, 185 n. 2 (2d Cir. 2010) (Summary Order).

While stating that plaintiff  could perform a variety of activities, "including performing personal care, prepar[ing] meals, perform[ing] household chores and laundry, us[ing] public transportation, shop[ping] in stores . . . attend[ing church], and perform[ing] hobbies such as reading, writing, watching television, singing, sewing and using the internet" (T24), ALJ Weir entirely ignored the significant restrictions plaintiff identified in performing some of those activities. For example, ALJ Weir  ignored plaintiff's statement that the only component of

---

[11] Treatment notes from January 2013 also stated that plaintiff  was "[n]ot compliant with diabetic diet". T609.

laundry that she was able to perform was sorting the clothes – a far cry from his characterization of plaintiff as having the capacity to do laundry. T170, 353.   Likewise, he ignored her testimony that she had to sit on a stool to cook (T54);  that she was unable to vacuum, mop or sweep, and that she was only able to dust because she could sit down when doing so (T56, 353); and that a friend did her grocery shopping. T53, 353.

       The Acting Commissioner argues that plaintiff fails to demonstrate "how a need to sit to perform some activities . . . undermined or was inconsistent with the ALJ's RFC determination for sedentary work, which entails mostly sitting and the lifting and/or carrying of objects of nominal weight".  Acting Commissioner's Memorandum of Law [14-1], pp. 28-29 of 30.  I disagree.  When plaintiff's self-described activities of daily living are accurately set forth, it is not apparent that plaintiff could perform the two hours of standing per day required to perform sedentary work.  See Gray v. Chater, 903 F. Supp. 293, 300 (N.D.N.Y. 1995) ("[w]hile the Commissioner argues that each period of standing or walking in a sedentary job would be 'quite brief in duration,' so that the plaintiff, even with his restrictions, could perform sedentary work . . . there is no evidence that the plaintiff could stand for two hours a day, as might be required in a sedentary job").

       Therefore, I conclude that ALJ Weir's credibility assessment, which relied heavily upon plaintiff's daily activities, is not supported by substantial evidence, and recommend that the case be remanded on this basis. See  Hilsdorf v. Commissioner of Social Security, 724 F. Supp. 2d 330, 351 (E.D.N.Y. 2010) ("the ALJ's conclusion that Plaintiff's reported daily activities were inconsistent with Plaintiff's subjective complaints of pain is not supported by substantial evidence in the record. Although the ALJ noted that Plaintiff took walks during the day, drove a car, did some shopping, and smoked a pack of cigarettes a day, he wholly ignored

the qualifications that Plaintiff placed on his ability to engage in these activities"); Horan v. Astrue, 350 Fed. App'x 483, 485 (2d Cir. 2009) (Summary Order) ("[b]ecause the ALJ's credibility determination was based largely on these factual errors, we cannot say that it is supported by substantial evidence"); Branca v. Commissioner of Social Security, 2013 WL 5274310, *13 (E.D.N.Y. 2013) ("[a]lthough the ALJ may choose what weight to give to plaintiff's testimony and other evidence in the record, this failure to consider certain testimony, or misconstruing such testimony, warrants . . . remand"); Moyers v. Astrue, 2008 WL 2568260, *1 (W.D. Mo. 2008) ("another credibility determination is necessary", where "the ALJ's analysis of Plaintiff's testimony regarding her daily activities does not accurately reflect Plaintiff's description of her limitations").

## CONCLUSION

For these reasons, I recommend that plaintiff's motion [8] be granted to the extent that this case be remanded to the Acting Commissioner for further proceedings consistent with this Report and Recommendation, and that the Acting Commissioner's motion for judgment on the pleadings [14] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by August 2, 2017. Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co</u>., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: July 19, 2017

<u>/s/ Jeremiah J. McCarthy</u><br>
JEREMIAH J. MCCARTHY<br>
United States Magistrate Judge